United States District Court
Eastern District of Michigan
Southern Division

United States of America,

      Plaintiff,

Case No. 21-cr-20354

v.

Hon. Jonathan J.C. Grey

D-12 Gary Porter,

      Defendant.

_____/

## Plea Agreement

The United States of America and the defendant, Gary Porter, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

**1.  Count of Conviction**

The defendant will plead guilty to Count 1 of the First Superseding Indictment. Count 1 charges the defendant with RICO Conspiracy under 18 U.S.C. § 1962(d).

**2.  Statutory Maximum Penalties**

The defendant understands that the count to which he is pleading guilty carries the following maximum statutory penalties:

Page **1** of **23**

| Count 1 | Term of imprisonment: | Up to life imprisonment |
| | Fine: | Up to $250,000 |
| | Term of supervised release: | Up to 5 years |

## 3.   Agreement to Dismiss Remaining Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will move to dismiss any remaining charges in the First Superseding Indictment against the defendant in this case. Specifically, the United States Attorney's Office will move to dismiss Count 4 of the First Superseding Indictment, which charges the defendant with Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A).

## 4.   Elements of Count of Conviction

The elements of Count 1 are:

1. An enterprise, the Almighty Vice Lord Nation, existed;

2. The defendant was associated with the enterprise;

3. The defendant knowingly agreed to participate, directly or indirectly, in the conduct of the affairs of the enterprise;

4. The defendant and at least one other conspirator agreed that the defendant or a conspirator would engage in a pattern of racketeering activity, that is, to commit at least two acts of racketeering in furtherance of the enterprise, and;

5. The enterprise was engaged in, or its activities affected, interstate or foreign commerce.

The elements of the sentencing allegation are:

1. In furtherance of the AVLN enterprise, the defendant conspired to distribute and to possess with the intent to distribute at least 280 grams of a mixture or substance containing a detectable amount of cocaine base, a schedule II controlled substance, all of which was foreseeable to him.

## 5.  Factual Basis

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

The Almighty Vice Lord Nation (hereinafter referred to as "AVLN" or "Vice Lords") is a national gang with numerous branches that operate in Chicago, Illinois, and Michigan, among other places.  The

Vice Lords have a hierarchical chain of command, which includes "Universal Elites," "Branch Elites," "Enforcers," "Lieutenants," "Chief Enforcers," "Ministers of Literature," "Ministers of Command," "Secretaries," and "soldiers," "foot soldiers," "representatives," or "ones."

The Michigan AVLN branches take direction from the Michigan "Board," which is comprised of the leadership from each of the recognized AVLN branches, which include the Insane Vice Lords ("IVLs"), Mafia Insane Vice Lords ("MIVLs"), Traveling Vice Lords ("TVLs"), Cicero Insane Vice Lords ("CIVLs"), among others. The Board has overall decision-making authority for the AVLN in Michigan. Among other things, it approves membership rank and authorizes the sanctioning of members who are in violation of AVLN rules.

At all times relevant to Count One of the First Superseding Indictment, in the Eastern District of Michigan, and elsewhere, the AVLN, including its leadership, members, and associates, constituted an enterprise, as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, that was engaged in, and the activities of which affected, interstate commerce. The enterprise constituted an ongoing organization whose members

functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

Porter agreed to participate in the affairs of the AVLN when he became a member of the enterprise in 2020. Porter is a member of the TVL branch.

The AVLN enterprise, including the TVL branch, engaged in drug trafficking involving multiple types of Schedule I and II controlled substances. Based on their involvement in the enterprise, AVLN members, including Porter, enjoyed connections to drug suppliers who utilized an interstate network to facilitate drug trafficking. As part of his AVLN membership, Porter knowingly and voluntarily agreed to engage in a pattern of racketeering by participating with other AVLN members in a conspiracy to distribute and possess with the intent to distribute more than 280 grams of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, heroin, and prescription pills.

As a part of his membership in the AVLN, Porter sold drugs with other members of the AVLN, including from a TVL controlled house on Whitcomb Street in Detroit. For instance:

- On September 10, 2020, Porter was recorded discussing the drug sales he and other TVLs were engaged in at a TVL house. Porter was asked, "What's the most you can push on this block? For a day?" Porter responded that they could sell $800 to $900 per day. Ported then clarified that was just "crack" and not heroin.

- On September 18, 2020, Porter was recorded speaking to a senior member of the TVLs. Porter and the other TVL spoke about losing a drug house and its customers. Porter stated that a female advised she would be back. Porter stated, "bitch, I will blow [shoot] you. Don't do me like that."   Porter advised the new homeowners "threw the gun away" and put it on top of the couch (which was curbside).

- On September 22, 2020, an undercover ATF agent met with Porter and two other TVLs. The agent arranged to purchase $190 heroin from one of the other members, while Porter was present in the car. Porter left the car with another TVL who picked up the heroin from a supplier. The other TVL then sold two and a half grams of heroin to the agent.

- In a recorded call on November 23, 2020, a TVL stated that

Porter was in possession of another TVL's "work." The TVL instructed Porter get rid of the "boy" (heroin) because another TVL needed the money. Porter was asked how much heroin he had left. Porter advised six or seven grams.

- On November 24, 2020, Porter sold small amounts of heroin and crack cocaine to confidential informants.

- On December 1, 2020, an incarcerated TVL member arranged for Porter to receive $700 so that Porter could deliver it to the incarcerated member's drug supplier. In return, Porter could keep the incarcerated member's "work."

As a result of his own conduct and the conduct of coconspirators reasonably foreseeable to him, 280 grams of cocaine base, and 10 grams of heroin, are attributable to Porter.

It was also foreseeable to Porter and within the scope of his agreement that AVLN members kept firearms to protect their drug business. Porter himself kept possessed firearms for this purpose during his involvement in the conspiracy.

6.   **Advice of Rights**

The defendant has read the First Superseding Indictment, has discussed the charge and possible defenses with his attorney, and understands the crime charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A.   The right to plead not guilty and to persist in that plea;

B.   The right to a speedy and public trial by jury;

C.   The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D.   The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E.   The right to confront and cross-examine adverse witnesses at trial;

F.   The right to testify or not to testify at trial, whichever the defendant chooses;

G.    If the defendant chooses not to testify at trial, the right to

have the jury informed that it may not treat that choice as

evidence of guilt;

H.    The right to present evidence or not to present evidence at

trial, whichever the defendant chooses; and

I.    The right to compel the attendance of witnesses at trial.

**7.    Collateral Consequences of Conviction**

The defendant understands that his conviction here may carry

additional consequences under federal or state law. The defendant

understands that, if he is not a United States citizen, his conviction

here may require him to be removed from the United States, denied

citizenship, and denied admission to the United States in the future.

The defendant further understands that the additional consequences of

his conviction here may include, but are not limited to, adverse effects

on the defendant's immigration status, naturalized citizenship, right to

vote, right to carry a firearm, right to serve on a jury, and ability to hold

certain licenses or to be employed in certain fields. The defendant

understands that no one, including the defendant's attorney or the

Court, can predict to a certainty what the additional consequences of

the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his conviction.

### 8.   Defendant's Guideline Range

#### A.   Court's Determination

The Court will determine the defendant's guideline range at sentencing.

#### B.   Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a).  Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way;

denying his guilt on the offense to which he is pleading guilty;

committing additional crimes after pleading guilty; or otherwise

demonstrating a lack of acceptance of responsibility as defined in USSG

§ 3E1.1—the government will be released from its obligations under

this paragraph, will be free to argue that the defendant not receive *any*

reduction for acceptance of responsibility under USSG § 3E1.1, and will

be free to argue that the defendant receive an enhancement for

obstruction of justice under USSG § 3C1.1.

### C.    Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal

Procedure 11(c)(1)(B) that the following guideline provisions apply:

| Guideline | Description | Level |
|---|---|---|
| 2E1.1 | RICO Conspiracy cross reference to underlying racketeering activity – 2D1.1 for drug-trafficking activity | |
| 2D1.1(c)(5) | Base offense level for 1010 kilograms of converted drug weight | 30 |
| 2D1.1(b)(1) | Firearm was possessed | +2 |
| Adjusted offense level | | 32 |

The parties have no other joint recommendations as to the

defendant's guideline calculation.

### D.   Factual Stipulations for Sentencing Purposes

The parties have no additional factual agreements for sentencing purposes.

### E.   Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 8.B or 8.C. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F.   Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 8.B or 8.C. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

9.    **Imposition of Sentence**

    A.    **Court's Obligation**

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a).

    B.    **Imprisonment**

        1.    **Agreement**

Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that a sentence of at least 37 months and no more than 46 months is the appropriate disposition of this case. The government's agreement, which is to a sentence within the sentencing guideline range had the quantity of cocaine base for which the defendant is responsible been powder cocaine, reflects the Department of Justice's support for the elimination of the sentencing disparity between cocaine base and powder cocaine.

        2.    **Limited Right to Withdraw**

If the Court rejects the agreement by deciding to impose a sentence of imprisonment higher than 46 months, the defendant will be

permitted to withdraw his guilty plea. That is the only reason the defendant may withdraw his guilty plea. If the defendant decides not to withdraw his guilty plea in those circumstances, the defendant agrees that the Court may impose a sentence higher than 46 months and that all other provisions in this agreement will remain in effect.

If the Court rejects the plea agreement by deciding to impose a sentence of imprisonment lower than 37 months, or by rejecting or purporting to reject any other term or terms of this agreement, the government will be permitted to withdraw from this agreement.

## C.    Supervised Release

### 1.    Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a five-year term of supervised release.

### 2.    No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the

government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

## D.     Fines

The parties have no agreement as to a fine.

## E.     Forfeiture

Pursuant to Fed. R. Crim. P. 32.2 and 18 U.S.C. § 1963(a)(1) through (3), the defendant agrees to forfeit to the United States any interest he acquired or maintained in violation of 18 U.S.C. § 1962, and any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise has established, operated, controlled, conducted, or participated in the conduct of, in violation of Section 1962; and any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of Section 1962.

The defendant also agrees, pursuant to Fed. R. Crim. P. 32.2, 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, to the entry of a personal

forfeiture money judgment against him in favor of the United States in an amount to be determined by the Court at the sentencing hearing, which is equal to the amount of proceeds the defendant obtained or derived, directly or indirectly, from his violation.

The defendant agrees that the forfeiture money judgment may be satisfied, to whatever extent possible, from any property owned or under the control of the defendant. To satisfy the money judgment, the defendant explicitly agrees to the forfeiture of any assets he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his rights to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

The defendant agrees to the entry of one or more orders of forfeiture, including a Preliminary Order of Forfeiture, containing the above referenced forfeiture of proceeds and the forfeiture money judgment, upon application by the United States at, or any time before, his sentencing in this case. The defendant agrees to sign such an order, indicating he consents to its entry if requested to do so by the government. The defendant agrees that the forfeiture order will be final and effective as to him upon entry by the Court.

The defendant agrees to complete and return a Financial Disclosure Form within three weeks of receiving it from government counsel, which may be used in any lawful manner to collect the money judgment amount and/or restitution, and which may be disclosed to any agencies or personnel of the government for that purpose. The financial statement shall disclose and list all assets, funds, and property of any kind in which the defendant has an interest, all liens and encumbrances against such assets, funds and property, and all of the defendant's liabilities. The financial statement must be signed by the defendant under penalty of perjury.

The defendant waives his right to have a jury determine the forfeitability of his interest in the above identified property as provided by Rule 32.2(b)(5) of the Federal Rules of Criminal Procedure.

The defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, pronouncement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that he understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure

by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure and/or forfeiture of property covered by this Plea Agreement.

The defendant knowingly, voluntarily, and intelligently waives any statutory and constitutional challenge to the above-described forfeiture including any challenge based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

### F.    Special Assessment

The defendant understands that he will be required to pay a special assessment of $100, due immediately upon sentencing.

## 10.   Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. The defendant also waives any right he may have to appeal his sentence on any grounds.

## 11.   Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the

defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

## 12.   Remedies for Withdrawal, Breach, Rejection, or Vacatur

If the defendant is allowed to withdraw his guilty plea or breaches this agreement, or if the Court rejects this agreement, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the defendant has been permitted to plead guilty to a lesser-included

offense, the government may also reinstate any charges or file any additional charges against the defendant for the greater offense, and the defendant waives his double-jeopardy rights with respect to the greater offense. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## 13.  Use of Withdrawn Guilty Plea

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

## 14.  Parties to Plea Agreement

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

15.  **Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

16.  **Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 p.m. on Friday, May 3, 2024.

The government may withdraw from this agreement at any time before the defendant pleads guilty.

Dawn N. Ison
United States Attorney

_____
Craig Wininger
Chief, Violent and Organized
Crime Unit
Assistant United States
Attorney

_____
Blake Hatlem
Dani Asher
Assistant United States
Attorneys

Dated:

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

_____
Samuel J. Churikian
Attorney for Defendant

_____
Gary Porter
Defendant

Page **22** of **23**

Dated: 5-8-24